**Betty BLAIR, et al., Plaintiffs**

v.

**CITY OF CLEVELAND,
et al., Defendants**

**No. 1:94 CV 2626.**

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 8, 2000.

John W. Martin, William D. Beyer, Sr., Ernest L. Jarrett, Cleveland, OH, for plaintiff.

Kathleen A. Martin, Nick Tomino, Thomas J. Kaiser, Cleveland, OH, for defendant.

## ORDER

OLIVER, District Judge.

On September 6, 2000, this court held a telephone conference to address whether the trial of the above-captioned matter, scheduled to commence on September 11, 2000, would go forward in light of the interlocutory appeal which Officers Tankersley and Gibson notified the court they were about to file. After full discussion with counsel and for the reasons stated below, the court concludes that the trial of Plaintiffs' claims against the City of Cleveland will go forward as scheduled. The trial of Plaintiffs' claims against Officers

Tankersley and Gibson is stayed pending the resolution of their interlocutory appeal.

## I. Background

On September 1, 2000, this court held a Settlement Conference for the above-captioned matter. During the conference, counsel for Officers Tankersley and Gibson indicated that his clients were considering an interlocutory appeal of this court's August 29, 2000 order, denying Defendants' motion for summary judgment with regard to qualified immunity. Counsel indicated that Officers Tankersley and Gibson had not yet decided whether to pursue an appeal. Given the proximity of the trial of this matter, the court requested counsel inform all parties by September 6, 2000, whether his clients intended to file a notice of appeal. On September 5, 2000, counsel for the officers notified the court and the parties that Officers Tankersley and Gibson do intend to appeal. The officers filed their notice of appeal on September 7, 2000.

## II. Should the Court Stay the Proceedings Against Officers Tankersley and Gibson

■ It is well established that a district court's order denying a defendant's motion for summary judgment is immediately appealable where the defendant is a public official asserting a qualified immunity defense. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The justification for allowing an interlocutory appeal in such a case is that the rights created by immunity would effectively be destroyed if the defendant were forced to defend himself at trial before a final determination was made as to immunity. *See Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir.1989) ("It makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one.").

The court in *Apostol* recognized that, while the right to immediate appeal protects the interests of the defendants asserting the qualified immunity defense, it may also injure the legitimate interests of other litigants. *Id.*

During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined. Most deferments will be unnecessary. The majority of Forsyth appeals—like the bulk of all appeals—end in affirmance. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. Defendants may take Forsyth appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings masquerading as Forsyth appeals but in fact not presenting genuine claims of immunity create still further problems.

*Id.* at 1338–39. Moreover, because the filing of a notice of appeal regarding qualified immunity acts as an automatic stay of the trial of a case, defendants with ulterior motives may file such notices abusively. *See Yates v. City of Cleveland,* 941 F.2d 444, 448 (6th Cir.1991) ("Unfortunately, Forsyth appeals can be employed for the sole purpose of delaying trial. This possibility has not eluded the attention of the Courts of Appeal.").

■ District courts are not without power to prevent defendants will from filing frivolous appeals or those employed solely for the purpose of delaying trial. Whereas under normal circumstances the filing of an interlocutory appeal on the ground of qualified immunity would deprive the district court of jurisdiction to require the appealing defendants to defend

themselves at trial, the *Apostol* court held that, "[i]f the claim of immunity is a sham ... the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks." *Apostol,* 870 F.2d at 1339. Under the court's holding in *Apostol,* where a court finds that an appeal is frivolous, or where the defendants use claims of immunity in a manipulative fashion, the district court may certify that the defendant has surrendered the entitlement to a pretrial appeal and proceed with trial. *Id. See also Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992) ("Should the district court find that the defendants' claim of qualified immunity is frivolous or has been waived, the district court may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial.").

The Sixth Circuit, while not applying the holding in *Apostol,* has cited that court's logic with approval. In *Yates,* the defendants waited until five years after the initial filing to raise the qualified immunity defense. *Yates,* 941 F.2d at 448. The court emphasized that "[a]lthough it is important to protect public officials from frivolous claims and burdens of trials, it is also important to curtail the outlay and delay of litigation, so that victims of official misconduct may receive the vindication that is their due." *Id.* at 449 (quoting *Abel v. Miller,* 904 F.2d 394, 396 (7th Cir.1990)). The *Yates* court declined to dispose of the appeal with which it was faced on waiver grounds, because the district court had made no findings of frivolousness or waiver. *Id.* But the court took care to stress that "the district court has discretion to cut off motions for summary judgment, even those which may challenge the plaintiff's right to go to trial on the basis of an absolute or qualified immunity." *Id.* (quoting *Kennedy v. City of Cleveland,* 797 F.2d 297, 301 (6th Cir.1986)).

In this case, the court does not find that the record supports any inordinate delay in filing the notice of appeal by Defendants; the questions remains, whether appeal by the officers would be frivolous. This court has already determined that there exist genuine issues of material fact as to the type and amount of force used by the officers, as well as whether the officers were aware of Pipkins' medical condition and failed to address it. It would appear to this court that a reasonable jury could find in favor of the Plaintiffs on their excessive force claim, where an admittedly unarmed suspect was subdued by two officers, one of whom kicked him, while the other choked him until he lost consciousness, and where the officers picked up the unconscious suspect and threw him, face down, into the back seat of their vehicle. This could be the result even in the face of evidence indicating that the suspect wrestled with the officers who were attempting to arrest him.

It would also appear to this court that a reasonable jury could find, based on the fact that the officers choked Pipkins until he was unconscious, that he was still unconscious when he reached the police station, and that he was given no medical attention for fifteen minutes after his arrival at the station, that the officers were deliberately indifferent to his medical needs.

Despite its determination that genuine issues of material fact preclude a finding of qualified immunity, the court declines to certify that the officers' appeal is frivolous. Acknowledging the importance of public officials' right to avoid trial where they are entitled to immunity, the court does not wish to defeat the purpose of the rule by forcing the officers to defend themselves at trial, effectively extinguishing their

right to qualified immunity. Erring on the side of caution, the court instead stays the trial of Plaintiffs' claims against Officers Tankersley and Gibson, pending the outcome of their appeal on the issue of qualified immunity.

## III. Should the Court Stay the Proceedings Against the City of Cleveland

■ The Supreme Court in *Monell* held that a municipality could be sued directly for constitutional violations which it has itself caused pursuant to a municipal custom or policy. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Unlike Officers Tankersley and Gibson, the City cannot assert qualified immunity as a defense. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Moreover, whether the City may be held liable in the instant case does not require a finding that the officers are liable. Indeed, the parties in this case could have sued only the City, and not the officers, if they had so chosen.

While it is true that in order to hold the City liable, there must be proof that the officers violated Plaintiffs' constitutional rights, the elements of proof required for suits against the City and individual defendants vary in other important respects. An example best illustrates the point. Plaintiffs contend that Officers Tankersley and Gibson violated Michael Pipkins' constitutional rights by using excessive force to effect his arrest. Plaintiffs also contend that the City may be held liable for the alleged violation, based upon a failure to train its officers in the proper use and/or avoidance of certain neck restraints. A reasonable jury could find that the officers did, indeed, use excessive force in violation of Pipkins' rights. However, assuming the officers succeed in their appeal of this

court's order, it could be determined that a reasonable officer would not have known that his actions violated a clearly-established right, and that the officers are therefore immune. As indicated above, there is no such immunity to protect the City. Notwithstanding the officers' immunity, a jury could still find that the City violated Pipkins' constitutional rights by failing to adequately train its employees. Therefore, uncertainty as to whether Officers Tankersley and Gibson will be held immune to Plaintiffs' claims does not mandate that this court stay the trial of Plaintiffs' claims against the City.

The court recognizes the difficulties which will result from splitting up the trial of Plaintiffs' claims. Portions of the trials will be duplicative, requiring that the same witnesses appear. However, based on the parties' previous representations to the court regarding the nature of trial and the number of witnesses, as well as what the court has gleaned from reviewing the motions for summary judgment, the benefits of proceeding to trial far outweigh the drawbacks. Evidence regarding the City's alleged failure to train its employees, which makes up a large portion of Plaintiffs' case against the City, will only be presented at the first trial. To the extent that other evidence, such as the witnesses' accounts of the events of December 22, 1992, must be repeated during the second trial, that testimony will take very little time comparatively. Certainly witnesses' memories will be clearer now than they would be after the conclusion of an appeal. The court has allocated sufficient time in its docket for the trial of this matter at this time and cannot predict that when the case comes back from the court of appeals a similar block of time will be immediately available. The parties have assembled their witnesses and prepared their cases

for trial.[1]

■ It has been over five years since the instant suit was filed, and almost eight years since the events at issue took place. If there was, indeed, a violation of constitutional rights, then the court is obligated to avoid needless delay of litigation, "so that victims of official misconduct may receive the vindication that is their due." *Yates*, 941 F.2d at 449 (quoting *Abel*, 904 F.2d at 396). Notwithstanding the court's decision to stay the trial of Plaintiffs' claims against Officers Tankersley and Gibson pending a resolution of their interlocutory appeal, it is in the interest of justice to proceed with the trial of Plaintiffs' claims against the City of Cleveland.

### IV.  Conclusion

For the foregoing reasons, the trial of Plaintiffs' claims against the City of Cleveland will go forward as scheduled, commencing on September 11, 2000, at 9:00 a.m. The trial of Plaintiffs' claims against Officers Tankersley and Gibson is stayed pending the resolution of their interlocutory appeal.

IT IS SO ORDERED.

---

1.  While Defendants have suggested that Officers Tankersley and Gibson should not be required to testify at trial during the pendency of their appeal, the doctrine of qualified immunity teaches only that the officers should not be forced to defend themselves at trial. Certainly the officers may be called as witnesses in the trial of claims against the City.